07-CV-00076-CMP

```
_____ FILED  _____ ENTERED
_____ LODGED_  _____RECEIVED
        JAN 1 7 2007    DJ
              AT SEATTLE
        CLERK U.S. DISTRICT COURT
     WESTERN DISTRICT OF WASHINGTON
  BY                          DEPUTY
```

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ZX ENTERPRISES, INC., a Washington corporation,<br><br>                              Plaintiff,<br><br>and<br><br>CONOCOPHILLIPS COMPANY, a Delaware Corporation<br><br>                              Defendant. | CAUSE NO. **CV7 0076** P<br><br>COMPLAINT FOR PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, DAMAGES, EXEMPLARY DAMAGES, ETC. UNDER THE PETROLEUM MARKETING AND PRACTICES ACT [PMPA] |

ZX Enterprises, Inc., through its attorneys, Lawrence Cock and Cable, Langenbach, Kinerk & Bauer, LLP, file this Complaint for wrongful termination under the Petroleum Marketing and Practices Act, 15 U.S.C. § 2801 – 2806 seeking, *inter alia*, a preliminary injunction, damages, exemplary damages, attorney fees, and expert witness fees. ZX Enterprises, Inc. seeks a preliminary injunction prior to the February 28, 2007 (noon) termination of its franchise enunciated by ConocoPhillips Company in a Notice of Termination.

COMPLAINT - 1

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

**PARTIES**

1.      Plaintiff ZX Enterprises, Inc. [hereafter "ZX Enterprises"] is a Washington Corporation with its principal place of business in King County, Washington. ZX Enterprises is a franchisee as defined by 15 U.S.C. § 2801(4).

2.      The defendant, ConocoPhillips Company [hereafter "ConocoPhillips"], is a Delaware Corporation that does business in King County, Washington. ConocoPhillips' principal place of business is in Texas. ConocoPhillips is a franchisor as defined by 15 U.S.C. § 2801(3).

**JURISDICTION AND VENUE**

3.      The federal district court has original jurisdiction because this civil action arises under the Petroleum Marketing Practices Act [hereafter "PMPA"], a law of the United States of America. 15 U.S.C. § 2801, et seq.; 28 U.S.C. § 1331. The PMPA is an Act of Congress regulating commerce. 28 U.S.C. § 1337.

4.      The federal district court has jurisdiction under the PMPA, which provides "If a franchisor fails to comply with the requirements of section 2802 or section 2803 of this title, the franchisee may maintain a civil action against such franchisor. Such action may be brought, without regard to the amount in controversy, in the district court of the United States in any judicial district in which the principal place of business of such franchisor is located or in which such franchisee is doing business." 15 U.S.C. § 2805(a).

5.      The federal district court also has original jurisdiction because the amount in controversy in this civil action exceeds $75,000, exclusive of interest and costs and this lawsuit is between citizens of different states. 28 U.S.C. § 1332.

COMPLAINT - 2

6.      Venue is proper in the United States District Court, Western District of Washington under the PMPA because it is ZX Enterprises' primary place of business. In the alternative, venue is proper in the United States District Court, Western District of Washington because defendant ConocoPhillips has sufficient contacts with the district to subject it to jurisdiction and hence resides in the district.  28 U.S.C. § 1391(a)-(c).  In the alternative, venue is proper in the United States District Court, Western District of Washington because a substantial parts of the events giving rise to the claim occurred in the district.  28 U.S.C. § 1391(a)-(b).

## FACTS

7.      ZX Enterprises has operated a motor fuel service station at 600 Westlake Avenue N. in Seattle, Washington since October 1975 ("Station #5353").  The Station is operated pursuant to a *Union 76 Dealer Station Lease and Motor Fuel Supply Agreement*.  Station #5353 is located at the intersection of two major arterials: Westlake Avenue North and Mercer Street.  Evans Zefkeles is the sole shareholder of ZX Enterprises.  ZX Enterprises was formerly known as Van's Westlake Union, Inc.

8.      The real property upon which Station #5353 is situated is currently owned by ConocoPhillips by virtue of its merger with Tosco Corporation. ConocoPhillips also owns the adjacent real property to the east of Station #5353 at the corner of Mercer Street and Terry Avenue North.

9.      In early June 1980, a leak was detected at Station #5353 in the underground supply line for the super grade product.  The release resulted in contamination of the environment, soils, and groundwater on the property and in the general area of a damaged fuel line dispenser. The gasoline was pumped out of the ground, the underground storage tanks and piping were immediately replaced, two

COMPLAINT - 3

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1    product recovery trenches were installed on the service station property, and a number

2    of recovery wells were installed. Active recovery of free product began in June 1980.

3    Recovery of free product was discontinued in October 1982 as amounts recovered

4    dwindled.

5
        10.    At the time of the leak, Union Oil Company of California ["Unocal"]

6
     was the fee owner of the property upon which Station #5353 is located and the station

7
     was operated by plaintiff under a lease from Unocal.

8

9       11.    Shortly after the release, on or about June 30, 1980, Unocal, Van's

10   Westlake Union, Inc., and Evans Zefkeles entered into an agreement whereby

11   "[Unocal] will bear all expense and responsibility for recovery of lost product as a

12   result of this specific leak, including returning the station in question to full operation

13
     as we are permitted to reopen by local, state, and federal officials. It is the intent of this

14
     Agreement that Dealer incur no expense with regard to the clean-up activities except as

15

16   may hereafter be specifically described" [this Agreement is hereafter referred to as the

17   *Incur No Expense Agreement*"]. The *Incur No Expense Agreement* also provided that

18   "[Unocal] will receive, adjust, pay, settle, litigate, or otherwise handle claims made by

19
     parties other than Dealer or his employees which claims arise out of and are specifically

20
     connected with the leak at subject Service Station, clean-up activities, and resulting

21

22   business interruption of such third parties. If a lawsuit arises involving such a third

23   party and Westlake Union Service Inc. and/or Mr. Zefkeles is named as a defendant,

24   [Unocal] will supply at its cost and expense, a defense for Dealer and hereby agrees to

25   pay all judgments unless such judgment is covered by Dealer's insurance or Dealer was

26   solely responsible for the damages awarded as determined by a judge or jury."

27

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

12.     In 1997, Tosco Corporation acquired Unocal's retail operations, including Station #5353 and the real property commonly known as 600 Westlake Avenue North in Seattle, Washington.

13.     In October 2000, plaintiff entered into a standardized *Union 76 Dealer Station Lease and Motor Fuel Supply Agreement* ("2000 Tosco Dealer Lease") for the real property and service station located at 600 Westlake Avenue North in Seattle, Washington with Tosco Marketing Corporation, a division of Tosco Corporation. The term of the 2000 Tosco Dealer Lease ran from February 1, 2001 through January 31, 2005.

14.     In September 2001, Tosco Corporation was acquired by Phillips Petroleum Company, which subsequently merged with Conoco to create ConocoPhillips. ConocoPhillips became Tosco Corporation's successor to the 2000 Tosco Dealer Lease by merger.

15.     To further remediate the service station property and the adjacent ConocoPhillips property to the east, and to prevent hydrocarbon migration off-site onto the adjacent properties, a new remediation system was designed and installed by ConocoPhillips in 2003. Approximately 1,410 tons of impacted soil was removed during installation of the trench and wells. The new remediation system was installed and began operating in August of 2003.

16.     Also in 2003, ZX Enterprises and ConocoPhillips agreed to modify the 2000 Tosco Dealer Lease to allow ZX Enterprises to convert, at its own expense, the existing automobile repair bays into a convenience store.

17.     On or about August 31, 2004, ZX Enterprises and ConocoPhillips renewed the standardized *Union 76 Dealer Station Lease and Motor Fuel Supply*

COMPLAINT - 5

1   *Agreement* ("2004 ConocoPhillips Dealer Lease") for the real property and service
2   station located at 600 Westlake Avenue North in Seattle, Washington.  The term of the
3   2004 ConocoPhillips Dealer Lease commenced on February 1, 2005 and will not expire
4   until January 31, 2008.

5
6       18.     The 2004 ConocoPhillips Dealer Lease is subject to and governed by
7   Title 1 of the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, et seq. ("PMPA").

8       19.     Under the PMPA (15 U.S.C. § 2802(a)), ConocoPhillips has a
9   continuing duty to renew the franchise relationship unless a specifically enumerated
10  reason for termination or nonrenewal occurs.

11      20.     Station #5353 is located in the South Lake Union neighborhood of
12  Seattle, Washington.  In recent years, the South Lake Union neighborhood has been the
13
    focus of several high-profile development efforts, including the defunct Seattle Public
14
15  Commons and the current South Lake Union Street Car Project.   Vulcan, Inc., a
16  development company founded by Microsoft Corporation co-founder Paul Allen, has
17  been a major proponent of many of the redevelopment efforts in the South Lake Union
18  neighborhood.  The route of the South Lake Union Street Car travels along Westlake
19  Avenue past Station #5353.

20
21      21.     In 2001, the City of Seattle sold eight South Lake Union properties to
22  City Investors XI, LLC, a subsidiary of Vulcan, Inc.  One of the properties ("Parcel
23  14") is immediately to the north of Station #5353 and abuts the property.

24      22.     On or about April 22, 2005, City Investors XI, LLC and the City of
25  Seattle jointly filed suit in King County Superior Court against Unocal, ConocoPhillips,
26  and Evans Zefkeles ["KCSC No. 05-2-13734-7"].    The lawsuit demanded that
27

COMPLAINT - 6

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1  defendants pay for the cost of remedial action and cleanup of the contamination that

2  had migrated onto Parcel 14 and the adjoining rights-of-way.

3      23.    In November 2005, ZX Enterprises requested that ConocoPhillips

4  indemnify Evans Zefkeles from the City of Seattle and City Investors XI, LLC's suit on

5  the basis of the June 30, 1980 *Incur No Expense Agreement* between Unocal, Westlake

6  Union Service, Inc., and Evans Zefkeles.  On June 1, 2006, ConocoPhillips formally

7

8  accepted Mr. Zefkeles' request that ConocoPhillips defend and indemnify him as set

9  forth in paragraph 2 of the June 30, 1980 *Incur No Expense Agreement*.

10      24.    On May 18, 2006, the parties to the King County Superior Court lawsuit

11  (except Mr. Zefkeles) represented to the court that they had settled their lawsuit.

12      25.    On or about June 9, 2006, at least one party to the King County Superior

13  Court lawsuit (City Investors XI, LLC) signed a *Summary of Proposed Terms of*

14  *Agreement for Settlement*.

15

16      26.    Although ConocoPhillips had accepted Mr. Zefkeles' tender of defense

17  of the lawsuit, Mr. Zefkeles is not a party to the *Summary of Proposed Terms of*

18  *Settlement*.

19      27.    Although the *Summary of Proposed Terms of Settlement* obligated the

20  parties to enter into a final settlement agreement within twenty-eight days, they did not

21  do so.  More than six months have passed and the parties have not entered into a final

22

23  settlement agreement.

24      28.    A *Stipulation and Order of Dismissal With Prejudice* of the lawsuit by

25  City Investors XI, LLC and the City of Seattle against Unocal, ConocoPhillips, and

26  Evans Zefkeles was presented and signed by the court on June 9, 2006.  The *Stipulation*

27  *and Order* dismissed the lawsuit against all defendants with prejudice.

COMPLAINT - 7

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

29.     On July 7, 2006, construction for the South Lake Union streetcar line broke ground.

30.     The remediation of Westlake Avenue North adjacent to Station #5353 in anticipation of the South Lake Union streetcar line is mostly complete and has been effectuated without requiring remediation on the property underneath Station #5353.

31.     Section 30 of the 2004 ConocoPhillips Dealer Lease purports to address circumstances under which ConocoPhillips may terminate the Dealer Lease.

32.     On or about November 30 or December 1, 2006, ConocoPhillips hand delivered a "Notice of Termination" to ZX Enterprises. The Notice states that ZX Enterprises, Inc.'s franchise relationship with ConocoPhillips and the 2004 ConocoPhillips Dealer Lease shall terminate at 12:00 noon of February 28, 2007.

33.     The Notice does not identify any section of the PMPA upon which ConocoPhillips relies in terminating the franchise relationship. Rather, the Notice states that the grounds for termination are based on Section 22 – Major Repairs of the 2004 ConocoPhillips Dealer Lease. In particular, the Notice asserts that "[a]s a result of the lawsuit brought by the City of Seattle, ConocoPhillips has been compelled to remediate the property consistent with a timetable that the City has determined is in the public interest. To effect the remediation in a way that comports with the City's requirements ConocoPhillips is required to demolish the existing facilities at the Station. ConocoPhillips has determined that replacement of the demolished facilities will cost more than $50,000, and ConocoPhillips has determined in good faith to NOT restore the demolished facilities." ConocoPhillips gave no other basis for termination of the 2004 ConocoPhillips Dealer Lease.

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

34.     Although the Notice of Termination asserts that the ConocoPhillips is required to demolish the existing facilities, the *Summary of Proposed Terms of Settlement* does not require demolition of the facilities or removal of the soil under the facilities.   Although the Notice of Termination asserts that the City of Seattle has imposed a "timetable" applicable to remediation of the service station property, the *Summary of Proposed Terms of Settlement* does not impose a timetable.

35.     On January 12, 2007, legal counsel for ZX Enterprises wrote to ConocoPhillips' general counsel to demand that ConocoPhillips rescind its Notice of Termination for failure to comply with the Petroleum Marketing and Practices Act. ConocoPhillips failed and/or refused to rescind the Notice of Termination.

**Cause of Action I**
**PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION**
**UNDER THE PMPA**

36.     Plaintiff incorporates by reference all other allegations in this Complaint.

37.     Under the PMPA, the court "shall grant equitable relief as the court determines is necessary to remedy the effects of any failure to comply with the requirements of section 2802." 15 U.S.C. § 2805(b).

38.     Plaintiff's franchise has been terminated, effective February 28, 2007, by ConocoPhillips.  A copy of the Notice of Termination is attached as Exhibit 1.

39.     Plaintiff has satisfied its burden of proof under 15 U.S.C. § 2805 by proving the termination of the franchise.  ConocoPhillips has the burden of going forward with evidence to establish as an affirmative defense that the termination was permitted under section 2802(b). 15 U.S.C. § 2805(c).

COMPLAINT - 9

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

40.     There exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation, to wit:

- Section 22 of the 2004 ConocoPhillips Dealer Lease is not grounds for termination under 15 U.S.C. § 2802(b)(2)(A)-(E).

- Section 22 of the 2004 ConocoPhillips Dealer Lease is not grounds for termination under 15 U.S.C. § 2802(c)(1)-(12).

- Section 22 of the 2004 ConocoPhillips Dealer Lease violates § 2802(b)(2) of the PMPA by attempting to avoid the protections that Congress guaranteed the franchisee in § 2802(b)(3).

- Section 22 of the 2004 ConocoPhillips Dealer Lease violates § 2805(f) of the PMPA, which prohibits any waiver or release of a franchisee's rights under the PMPA.

- If ConocoPhillips made a promise to The City of Seattle to remediate the property, that promise is not an event relevant to the "franchise relationship" as "franchise relationship" is defined by 15 U.S.C. § 2801(2).

- ConocoPhillips knew of the reason identified in the Notice more than 120 days prior to delivering the notice. Thus, ConocoPhillips delivered the notice more than 120 days after knowing of the reason identified, causing a termination under 15 U.S.C. § 2802(b)(2)(C) to be void and/or invalid.

- Even if Section 22 of the 2004 ConocoPhillips Dealer Lease qualifies as a reason for termination under the PMPA, it would be unreasonable to allow termination in this case because it would defeat ZX Enterprises' reasonable expectations, particularly in light of the 1980 *Incur No Expense Agreement* (discussed in paragraph 11 above).

- ConocoPhillips' delivery of the notice did not comply with 15 U.S.C. § 2804(a)(2) because it was delivered only eighty-nine days prior to the termination date.

- ConocoPhillips' Notice of Termination does not comply with 15 U.S.C. § 2804(b)(2)(c)(3) because it failed to provide ZX Enterprises, Inc. with sufficient information to determine what provision of the PMPA ConocoPhillips is relying upon in its Notice of Termination.

41.     The balance of the hardships imposed on ConocoPhillips if the court grants an injunction will be less than the hardship imposed on ZX Enterprises if the court does not grant preliminary injunctive relief. ZX Enterprises will lose substantial income, as well losing substantial investments in the property, including a recent

COMPLAINT - 10

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1 investment to convert the repair bays into a convenience store. Further, allowing
2 termination would deprive Zefkeles and ZX Enterprises of the benefits of the *Incur No*
3 *Expense Agreement* signed in 1980, and deprive ZX Enterprises of several decades of
4 accumulated goodwill.

5 
6 42. The court should issue a preliminary injunction that enjoins
7 ConocoPhillips, until the trial of this action, from:

8 ▪ Terminating the 2004 ConocoPhillips Dealer Lease or the franchise
relationship (including taking any steps to terminate the Lease or
9 franchise relationship) between ZX Enterprises and ConocoPhillips.

10 ▪ Attempting to dispossess ZX Enterprises of the service station at issue in
this action or affecting the occupation by ZX Enterprises of the service
11 station property in any way.

12 43. The court should not require a bond or condition the injunction on the
13 filing of a nominal bond. 15 U.S.C. § 2805(b)(3).

14 44. The court should issue permanent injunctive relief prohibiting the
15 termination and/or nonrenewal of the lease and/or franchise relationship by
16 
17 ConocoPhillips on grounds to the extent that termination and/or nonrenewal is based on
18 the 1980 spill, ConocoPhillips's obligation to perform environmental remediation,
19 paragraph 22 of the 2004 ConocoPhillips Dealer Lease, and/or any reason that does not
20 comply with the PMPA.

21 **Cause of Action II**
22 **DAMAGES AND EXEMPLARY DAMAGES UNDER THE PMPA**

23 45. All previous paragraphs are incorporated by reference.

24 46. On January 12, 2007, ZX Enterprises demanded that ConocoPhillips
25 rescind its Notice of Termination. ConocoPhillips refused.

26 47. ConocoPhillips' Notice of Termination is in willful disregard of section
27 2802 of the PMPA and ConocoPhillips has acted in bad faith.

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

48.    ZX Enterprises has suffered damages or will suffer damages, and has and will incur attorney fees and expert witness fees.

49.    ZX Enterprises is entitled to damages, exemplary damages, attorney fees, and expert witness fees for ConocoPhillips' violation of the PMPA.

**Cause of Action III**
**DAMAGES, TREBLE DAMAGES, AND ATTORNEY FEES**
**UNDER WASHINGTON'S GASOLINE DEALER BILL OF RIGHTS &**
**WASHINGTON'S CONSUMER PROTECTION ACT**

50.    ConocoPhillips Company has consistently charged ZX Enterprises substantially more for gasoline than other motor fuel retailers and charged more than a fair and reasonable price.

51.    For example, in May 2006, ZX Enterprises complained to ConocoPhillips' Northwest Dealer Operations that Station #5353 was being charged 14 cents more per gallon for unleaded and 16 more per gallon for premium than a similarly situated station in Snohomish County, Washington.

52.    ConocoPhillips has charged more than a fair and reasonable price to ZX Enterprises by charging it substantially more for gasoline than charged to ConocoPhillips owned and operated stations in the same zone as Station #5353.

53.    Washington's Gasoline Dealer Bill of Rights, RCW Chapter 19.120.080(1), requires ConocoPhillips to deal with ZX Enterprises in good faith and ConocoPhillips has breached its duty. Among other acts or omissions, ConocoPhillips breached its duty by negotiating a *Summary of Proposed Terms of Settlement* contrary to Mr. Zefkeles' interests, after accepting tender of the defense of the lawsuit brought by the City of Seattle from Mr. Zefkeles.

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

54.     Washington's Gasoline Dealer Bill of Rights, RCW Chapter 19.120, makes it unlawful for ConocoPhillips to discriminate between retailers unless ConocoPhillips can prove nonarbitrary, proper, and justifiable distinctions between the retailers.  RCW Chapter 19.120 makes it unlawful for ConocoPhillips to charge more than a fair and reasonable price for gasoline.

55.     A violation of RCW 19.120.080(2) is a per se unfair or deceptive act or practice or an unfair method of competition for purposes of RCW Chapter 19.86.020-030.

56.     The unfair act or practice has a capacity to deceive a substantial portion of the public and the sale of motor fuel affects commerce as well as Washington's citizens directly and indirectly.

57.     ZX Enterprises has been harmed in its property and suffered damages proximately caused by the prices charged by ConocoPhillips for gasoline supplied to Station #5353.

58.     ZX Enterprises is entitled to recover its damages, treble damages up to $10,000, and attorney fees, and is entitled to injunctive relief prohibiting any further unfair charges and/or discriminatory pricing by ConocoPhillips.

PRAYER FOR RELIEF

ZX Enterprises, Inc. prays for the following relief:

A preliminary injunction as specified above;

A permanent injunction as specified above;

Actual damages;

Exemplary damages under the PMPA and treble damages up to $10,000 under Washington's Consumer Protection Act;

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1      Attorney fees and expert witness fees; and

2      Such other relief as the court deems just as appropriate.

3    Respectfully submitted this 17th day of January, 2007.

4                 CABLE, LANGENBACH, KINERK & BAUER, LLP

5

6

7              By: _____

                               Lawrence R. Cock, WSBA No. 20326

8                            lrc@cablelang.com

                               Fredrick D. Huebner, WSBA No. 12682

9                            fdh@cablelang.com

                               Steven F. Kerr, WSBA No. 31518

10                           sfkerr@cablelang.com

                               Cable, Langenbach, Kinerk & Bauer LLP

11                           1000 Second Avenue, Suite 3500

12                           Seattle, WA  98104

                               (206) 292-8800

13                           Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1

## CERTIFICATE OF SERVICE

2

3      I hereby certify that on January 17, 2007, I filed the foregoing with the Clerk of the

4      Court and served a copy to the defendant by legal messenger.

5

6

7

8      _____
       Lawrence R. Cock, WSBA No. 20326
9      Attorney for Plaintiff
       CABLE, LANGENBACH, KINERK & BAUER, LLP
10     Suite 3500, 1000 Second Avenue Building
       Seattle, Washington 98104-1048
11     (206) 292-8800 phone
       (206) 292-0494 facsimile
12     lrc@cablelang.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

COMPLAINT - 15


**ConocoPhillips**

November 30, 2006

255353
ZX Enterprises, Inc. ("DEALER")
600 Westlake Ave N
Seattle, WA 98109

RE:   Union 76 Dealer Station Lease and Motor Fuel Supply Agreement dated August 31, 2004
      (Agreement") regarding Site #255353 ("Station")

**NOTICE OF TERMINATION**
<u>CERTIFIED MAIL RETURN RECEIPT REQUESTED OR HAND DELIVERY</u>

Dear DEALER:

ConocoPhillips Company, successor to Tosco Corporation by merger ("CONOCOPHILLIPS"),
pursuant to the requirements of the Petroleum Marketing Practices Act ("PMPA") provides you
with this written notice that your franchise relationship with CONOCOPHILLIPS and the above
referenced Agreement shall terminate at **12:00 noon on February 28, 2007** ("Termination Date").

This Termination is pursuant to Section 22 of the above referenced Agreement entitled Major
Repairs, which states as follows:

> **22.   MAJOR REPAIRS.**
> In the event a major repair is required, which is the responsibility of CONOCOPHILLIPS
> and CONOCOPHILLIPS has determined will cost more than $50,000.00, including particularly
> replacement of under ground tanks or lines, CONOCOPHILLIPS shall have the right, at
> CONOCOPHILLIPS' sole option, to elect not to make the repair or replacement if
> CONOCOPHILLIPS has determined in good faith that the repair or replacement is uneconomical
> or does not further CONOCOPHILLIPS' legitimate business interests in the continued operation of
> the Station. In the event CONOCOPHILLIPS elects not to make said repairs and replacement,
> and CONOCOPHILLIPS determines the Station is no longer usable for the sale of motor fuel,
> motor oils and other merchandise, products and services customarily sold at such facilities, such
> event shall constitute appropriate grounds for termination of this Agreement.  If the Station is
> usable for the purposes set forth in this Agreement but has a diminished value without the repair
> or replacement, CONOCOPHILLIPS will adjust the rent in an equitable manner to reflect the
> diminished value determined by CONOCOPHILLIPS.

As a result of the lawsuit brought by the City of Seattle, ConocoPhillips has been compelled to
remediate the property consistent with a timetable that the City has determined is in the public
interest.  To effect the remediation in a way that comports with the City's requirements
ConocoPhillips is required to demolish the existing facilities at the Station.  ConocoPhillips has
determined that replacement of the demolished facilities will cost more than $50,000, and
ConocoPhillips has determined in good faith to NOT restore the demolished facilities.
Therefore, based on Section 22 of the Agreement, the Agreement and the PMPA franchise
relationship created by the Agreement is hereby terminated effective February 28, 2007.

Termination of the Agreement and the franchise relationship shall not discharge you from any debts and liabilities due and owing by DEALER to CONOCOPHILLIPS under the Agreement. As of the Termination Date, CONOCOPHILLIPS will cease motor fuel deliveries to the Station and remove any CONOCOPHILLIPS equipment and trademarks and trade dress including, but not limited to, credit card imprinters and signs. Please also be advised that CONOCOPHILLIPS will no longer accept transmittals for credit card transactions dated after the Termination Date. Credit card transmittals submitted for transactions after the Termination Date will be returned to you.

We respectfully request that you keep at the Station all the personal property covered by the Security Agreement between us. DO NOT SELL OR REMOVE the secured personal property of fixtures from the Station unless: 1) the property is resaleable merchandise sold in the normal course of the Station operation, or 2) CONOCOPHILLIPS has given its express, written consent to sell the secured items.

Enclosed with this Notice is a copy of the Department of Energy revised Summary of Title I of the PMPA, which we are required by the PMPA to provide to you. Should you have any questions regarding this notice please contact your Account Representative.

Sincerely,
ConocoPhillips Company

Ross Davidson
Manager, West Coast & Retail

Cc:     Sara Mottaz
        Steve Hushebeck
        Jeff Paymen
        Michelle Wilson
        Sheila Hunt
        File

NOTICES

DEPARTMENT OF ENERGY

Revised Summary of Title I of the Petroleum Marketing Practices Act

Tuesday, June 25, 1996

SUMMARY: This notice contains a summary of Title I of the Petroleum Marketing Practices Act, as amended (the Act). The Petroleum Marketing Practices Act was originally enacted on June 19, 1978, and was amended by the Petroleum Marketing Practices Act Amendments of 1994, enacted on October 19, 1994. On August 30, 1978, the Department of Energy published in the Federal Register a summary of the provisions of Title I of the 1978 law, as required by the Act. The Department is publishing this revised summary to reflect key changes made by the 1994 amendments.

The Act is intended to protect franchised distributors and retailers of gasoline and diesel motor fuel against arbitrary or discriminatory termination or nonrenewal of franchises. This summary describes the reasons for which a franchise may be terminated or not renewed under the law, the responsibilities of franchisors, and the remedies and relief available to franchisees. The Act requires franchisors to give franchisees copies of the summary contained in this notice whenever notification of termination or nonrenewal of a franchise is given.

FOR FURTHER INFORMATION CONTACT: Carmen Difiglio, Office of Energy Efficiency, Alternative Fuels, and Oil Analysis (PO-62), U.S. Department of Energy, Washington, D.C. 20585, Telephone (202) 586-4444; Lawrence Leiken, Office of General Counsel (GC-73), U.S. Department of Energy, Washington, D.C. 20585, Telephone (202) 586-6978.

SUPPLEMENTARY INFORMATION: Title I of the Petroleum Marketing Practices Act, as amended, 15 U.S.C. SS2801-2806, provides for the protection of franchised distributors and retailers of motor fuel by establishing minimum Federal standards governing the termination of franchises and the nonrenewal of franchise relationships by the franchisor or distributor of such fuel. Section 104(d)(1) of the Act required the Secretary of Energy to publish in the Federal Register a simple and concise summary of the provisions of Title I, including a statement of the respective *32787 responsibilities of, and the remedies and relief available to, franchisors and franchisees under that title. The Department published this summary in the Federal Register on August 30, 1978. 43 F.R. 38743 (1978).

In 1994 the Congress enacted the Petroleum Marketing Practices Act Amendments to affirm and clarify certain key provisions of the 1978 statute. Among the key issues addressed in the 1994 amendments are: (1) termination or nonrenewal of franchised dealers by their franchisors for purposes of conversion to "company" operation; (2) application of state law; (3) the rights and obligations of franchisors and franchisees in third-party lease situations; and (4) waiver of rights limitations. See H.R. REP. NO. 737, 103rd Cong., 2nd Sess. 2 (1994), reprinted in 1994 U.S.C.C.A.N. 2780. Congress intended to: (1) make explicit that upon renewal a franchisor may not insist on changes to a franchise agreement where the purpose of such changes is to prevent renewal in order to convert a franchisee-operated service station into a company-operated service station; (2) make clear that where the franchisor has an option to continue the lease or to purchase the premises but does not wish to do so, the franchisor must offer to assign the option to the franchisee; (3) make clear that no franchisor may require, as a condition of entering or renewing a franchise agreement, that a franchisee waive any rights under the Petroleum Marketing Practices Act, any other Federal law, or any state law; and (4) reconfirm the limited scope of Federal preemption under the Act. Id.

The summary which follows reflects key changes to the statute resulting from the 1994 amendments. The Act requires franchisors to give copies of this summary statement to their franchisees when entering into an agreement to terminate the franchise or not to renew the franchise relationship, and when giving notification of termination or nonrenewal. This summary does not purport to interpret the Act, as amended, or to create new legal rights. In addition to the summary of the provisions of Title I, a more detailed description of the definitions contained in the Act and of the legal remedies available to franchisees is also included in this notice, following the summary statement.

Summary of Legal Rights of Motor Fuel Franchisees

This is a summary of the franchise protection provisions of the Federal Petroleum Marketing Practices Act, as amended in 1994 (the Act), 15 U.S.C. SS 2801-2806. This summary must be given to you, as a person holding a franchise for the sale, consignment or distribution of gasoline or diesel motor fuel, in connection with any termination or nonrenewal of your franchise by your franchising company (referred to in this summary as your supplier).

You should read this summary carefully, and refer to the Act if necessary, to determine whether a proposed termination or nonrenewal of your franchise is lawful, and what legal remedies are available to you if you think the proposed termination or failure to renew is not lawful. In addition, if you think your supplier has failed to comply with the Act, you may wish to consult an attorney in order to enforce your legal rights.

The franchise protection provisions of the Act apply to a variety of franchise agreements. The term "franchise" is broadly defined as a license to use a motor fuel trademark which is owned or controlled by a refiner, and it includes secondary arrangements such as leases of real property and motor fuel supply agreements which have existed continuously since May 15, 1973, regardless of a subsequent withdrawal of a trademark. Thus, if you have lost the use of a trademark previously granted by your supplier but have continued to receive motor fuel supplies through a continuation of a supply agreement with your supplier, you are protected under the Act.

Any issue arising under your franchise which is not governed by this Act will be governed by the law of the State in which the principal place of business of your franchise is located.

Although a State may specify the terms and conditions under which your franchise may be transferred upon the death of the franchisee, it may not require a payment to you (the franchisee) for the goodwill of a franchise upon termination or nonrenewal.

The Act is intended to protect you, whether you are a distributor or a retailer, from arbitrary or discriminatory termination or nonrenewal of your franchise agreement. To accomplish this, the Act first lists the reasons for which termination or nonrenewal is permitted. Any notice of termination or nonrenewal must state the precise reason, as listed in the Act, for which the particular termination or nonrenewal is being made. These reasons are described below under the headings "Reasons for Termination" and "Reasons for Nonrenewal."

The Act also requires your supplier to give you a written notice of termination or intention not to renew the franchise within certain time periods. These requirements are summarized below under the heading "Notice Requirements for Termination or Nonrenewal."

The Act also provides certain special requirements with regard to trial and interim franchise agreements, which are described below under the heading "Trial and Interim Franchises."

The Act gives you certain legal rights if your supplier terminates or does not renew your franchise in a way that is not permitted by the Act. These legal rights are described below under the heading "Your Legal Rights."

The Act contains provisions pertaining to waiver of franchisee rights and applicable State law. These provisions are described under the heading "Waiver of Rights and Applicable State Law."

This summary is intended as a simple and concise description of the general nature of your rights under the Act. For a more detailed description of these rights, you should read the text of the Petroleum Marketing Practices Act, as amended in 1994 (15 U.S.C. SS2801-2806). This summary does not purport to interpret the Act, as amended, or to create new legal rights.


I.      Reasons for Termination

If your franchise was entered into on or after June 19, 1978, the Act bars termination of your franchise for any reasons other than those reasons discussed below. If your franchise was entered into before June 19, 1978, there is no statutory restriction on the reasons for which it may be terminated. If a franchise entered into before June 19, 1978, is terminated, however, the Act requires the supplier to reinstate the franchise relationship unless one of the reasons listed under this heading or one of the additional reasons for nonrenewal described below under the heading "Reasons for Nonrenewal" exists.

A.      Non-Compliance with Franchise Agreement

Your supplier may terminate your franchise if you do not comply with a reasonable and important requirement of the franchise relationship. However, termination may not be based on a failure to comply with a provision of the franchise that is illegal or unenforceable under applicable Federal, State or local law. In order to terminate for non-compliance with the franchise agreement, your supplier must have learned of this non-compliance recently. The Act limits the time period within which your supplier must have learned of your non-compliance to various periods, the longest of which is 120 *32788 days, before you receive notification of the termination.

B.      Lack of Good Faith Efforts

Your supplier may terminate your franchise if you have not made good faith efforts to carry out the requirements of the franchise, provided you are first notified in writing that you are not meeting a requirement of the franchise and you are given an opportunity to make a good faith effort to carry out the requirement. This reason can be used by your supplier only if you fail to make good faith efforts to carry out the requirements of the franchise within the period which began not more than 180 days before you receive the notice of termination.

C.      Mutual Agreement To Terminate the Franchise

A franchise can be terminated by an agreement in writing between you and your supplier if the agreement is entered into not more than 180 days before the effective date of the termination and you receive a copy of that agreement, together with this summary statement of your rights under the Act. You may cancel the agreement to terminate within 7 days after you receive a copy of the agreement, by mailing (by certified mail) a written statement to this effect to your supplier.

D.      Withdrawal From the Market Area

Under certain conditions, the Act permits your supplier to terminate your franchise if your supplier is withdrawing from marketing activities in the entire geographic area in which you operate. You should read the Act for a more detailed description of the conditions under which market withdrawal terminations are permitted. See 15 U.S.C. S2802(b)(E).

E.      Other Events Permitting a Termination

If your supplier learns within the time period specified in the Act (which in no case is more than 120 days prior to the termination notice) that one of the following events has occurred, your supplier may terminate your franchise agreement:

(1) Fraud or criminal misconduct by you that relates to the operation of your marketing premises.

(2) You declare bankruptcy or a court determines that you are insolvent.

(3) You have a severe physical or mental disability lasting at least 3 months which makes you unable to provide for the continued proper operation of the marketing premises.

(4) Expiration of your supplier's underlying lease to the leased marketing premises, if: (a) your supplier gave you written notice before the beginning of the term of the franchise of the duration of the underlying lease and that the underlying lease might expire and not be renewed during the term of the franchise; (b) your franchisor offered to assign to you, during the 90-day period after notification of termination or nonrenewal was given, any option which the franchisor held to extend the underlying lease or to purchase the marketing premises (such an assignment may be conditioned on the franchisor receiving from both the landowner and the franchisee an unconditional release from liability for specified events occurring after the assignment); and (c) in a situation in which the franchisee acquires possession of the leased marketing premises effective immediately after the loss of the right of the right of the parent possession, the franchisor, upon the written request of the franchisee, made a bona fide offer to sell or assign to the franchisee the franchisor's interest in any improvements or equipment located on the premises, or offered the franchisee a right of first refusal of any offer from another person to purchase the franchisor's interest in the improvements and equipment.

(5) Condemnation or other taking by the government, in whole or in part, of the marketing premises pursuant to the power of eminent domain. If the termination is based on a condemnation or other taking, your supplier must give you a fair share of any compensation which he receives for any loss of business opportunity or good will.

(6) Loss of your supplier's right to grant the use of the trademark that is the subject of the franchise, unless the loss was because of bad faith actions by your supplier relating to trademark abuse, violation of Federal or State law, or other fault or negligence.

(7) Destruction (other than by your supplier) of all or a substantial part of your marketing premises. If the termination is based on the destruction of the marketing premises and if the premises are rebuilt or replaced by your supplier and operated under a franchise, your supplier must give you a right of first refusal to this new franchise.

(8) Your failure to make payments to your supplier of any sums to which your supplier is legally entitled.

(9) Your failure to operate the marketing premises for 7 consecutive days, or any shorter period of time which, taking into account facts and circumstances, amounts to an unreasonable period of time not to operate.

(10) Your intentional adulteration, mislabeling or misbranding of motor fuels or other trademark violations.

(11) Your failure to comply with Federal, State, or local laws or regulations of which you have knowledge and that relate to the operation of the marketing premises.

(12) Your conviction of any felony involving moral turpitude.

(13) Any event that affects the franchise relationship and as a result of which termination is reasonable.

II.     Reasons for Nonrenewal

If your supplier gives notice that he does not intend to renew any franchise agreement, the Act requires that the reason for nonrenewal must be either one of the reasons for termination listed immediately above, or one of the reasons for nonrenewal listed below.

A.     Failure To Agree on Changes or Additions To Franchise

If you and your supplier fail to agree to changes in the franchise that your supplier in good faith has determined are required, and your supplier's insistence on the changes is not for the purpose of converting the leased premises to a company operation or otherwise preventing the renewal of the franchise relationship, your supplier may decline to renew the franchise.

B.     Customer Complaints

If your supplier has received numerous customer complaints relating to the condition of your marketing premises or to the conduct of any of your employees, and you have failed to take prompt corrective action after having been notified of these complaints, your supplier may decline to renew the franchise.

C.     Unsafe or Unhealthful Operations

If you have failed repeatedly to operate your marketing premises in a clean, safe and healthful manner after repeated notices from your supplier, your supplier may decline to renew the franchise.

D.     Operation of Franchise is Uneconomical

Under certain conditions specified in the Act, your supplier may decline to renew your franchise if he has determined that renewal of the franchise is likely to be uneconomical. Your supplier may also decline to renew your franchise if he has decided to convert your marketing premises to a use other than for the sale of motor fuel, to sell the premises, or to materially alter, add to, or replace the premises.

*32789 III. Notice Requirements for Termination or Nonrenewal

The following is a description of the requirements for the notice which your supplier must give you before he may terminate your franchise or decline to renew your franchise relationship. These notice requirements apply to all franchise terminations, including franchises entered into before June 19, 1978 and trial and interim franchises, as well as to all nonrenewals of franchise relationships.

A.      How Much Notice Is Required

In most cases, your supplier must give you notice of termination or non- renewal at least 90 days before the termination or nonrenewal takes effect. In circumstances where it would not be reasonable for your supplier to give you 90 days notice, he must give you notice as soon as he can do so. In addition, if the franchise involves leased marketing premises, your supplier may not establish a new franchise relationship involving the same premises until 30 days after notice was given to you or the date the termination or nonrenewal takes effect, whichever is later. If the franchise agreement permits, your supplier may repossess the premises and, in reasonable circumstances, operate them through his employees or agents.

If the termination or nonrenewal is based upon a determination to withdraw from the marketing of motor fuel in the area, your supplier must give you notice at least 180 days before the termination or nonrenewal takes effect.

B.      Manner and Contents of Notice

To be valid, the notice must be in writing and must be sent by certified mail or personally delivered to you. It must contain:
        (1) A statement of your supplier's intention to terminate the franchise or not to renew the franchise relationship, together with his reasons for this action;
        (2) The date the termination or non-renewal takes effect; and
        (3) A copy of this summary.

IV.     Trial Franchises and Interim Franchises

The following is a description of the special requirements that apply to trial and interim franchises.

A.      Trial Franchises

A trial franchise is a franchise, entered into on or after June 19, 1978, in which the franchisee has not previously been a party to a franchise with the franchisor and which has an initial term of 1 year or less. A trial franchise must be in writing and must make certain disclosures, including that it is a trial franchise, and that the franchisor has the right not to renew the franchise relationship at the end of the initial term by giving the franchisee proper notice.

The unexpired portion of a transferred franchise (other than as a trial franchise, as described above) does not qualify as a trial franchise.

In exercising his right not to renew a trial franchise at the end of its initial term, your supplier must comply with the notice requirements described above under the heading "Notice Requirements for Termination or Nonrenewal."

B.      Interim Franchises

An interim franchise is a franchise, entered into on or after June 19, 1978, the duration of which, when combined with the terms of all prior interim franchises between the franchisor and the franchisee, does not exceed three years, and which begins immediately after the expiration of a prior franchise involving the same marketing premises which was not renewed, based on a lawful determination by the franchisor to withdraw from marketing activities in the geographic area in which the franchisee operates.
An interim franchise must be in writing and must make certain disclosures, including that it is an interim franchise and that the franchisor has the right not to renew the franchise at the end of the term based upon a lawful determination to withdraw from marketing activities in the geographic area in which the franchisee operates.

In exercising his right not to renew a franchise relationship under an interim franchise at the end of its term, your supplier must comply with the notice requirements described above under the heading "Notice Requirements for Termination or Nonrenewal."

V.      Your Legal Rights

Under the enforcement provisions of the Act, you have the right to sue your supplier if he fails to comply with the requirements of the Act. The courts are authorized to grant whatever equitable relief is necessary to remedy the effects of your supplier's failure to comply with the requirements of the Act, including declaratory judgment, mandatory or prohibitive injunctive relief, and interim equitable relief. Actual damages, exemplary (punitive) damages under certain circumstances, and reasonable attorney and expert witness fees are also authorized. For a more detailed description of these legal remedies you should read the text of the Act. 15 U.S.C. SS2801-2806.

VI.     Waiver of Rights and Applicable State Law

Your supplier may not require, as a condition of entering into or renewing the franchise relationship, that you relinquish or waive any right that you have under this or any other Federal law or applicable State law. In addition, no provision in a franchise agreement would be valid or enforceable if the provision specifies that the franchise would be governed by the law of any State other than the one in which the principal place of business for the franchise is located.

Further Discussion of Title I--Definitions and Legal Remedies

I.      Definitions

Section 101 of the Petroleum Marketing Practices Act sets forth definitions of the key terms used throughout the franchise protection provisions of the Act. The definitions from the Act which are listed below are of those terms which are most essential for purposes of the summary statement. (You should consult section 101 of the Act for additional definitions not included here.)

A.      Franchise

A "franchise" is any contract between a refiner and a distributor, between a refiner and a retailer, between a distributor and another distributor, or between a distributor and a retailer, under which a refiner or distributor (as the case may be) authorizes or permits a retailer or distributor to use, in connection with the sale, consignment, or distribution of motor fuel, a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such use.

   The term "franchise" includes any contract under which a retailer or distributor (as the case may be) is authorized or permitted to occupy leased marketing premises, which premises are to be employed in connection with the sale, consignment, or distribution of motor fuel under a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such occupancy. The term also includes any contract pertaining to the supply of motor fuel which is to be sold, consigned or distributed under a trademark owned or controlled by a refiner, or under a contract which has existed continuously since May 15, 1973, and pursuant to which, on May 15, 1973, motor fuel was sold, consigned or distributed under a *32790 trademark owned or controlled on such date by a refiner. The unexpired portion of a transferred franchise is also included in the definition of the term.

B.      Franchise Relationship

The term "franchise relationship" refers to the respective motor fuel marketing or distribution obligations and responsibilities of a franchisor and a franchisee which result from the marketing of motor fuel under a franchise.

C.      Franchisee

A "franchisee" is a retailer or distributor who is authorized or permitted, under a franchise, to use a trademark in connection with the sale, consignment, or distribution of motor fuel.

D.      Franchisor

A "franchisor" is a refiner or distributor who authorizes or permits, under a franchise, a retailer or distributor to use a trademark in connection with the sale, consignment, or distribution of motor fuel.

E.      Marketing Premises

"Marketing premises" are the premises which, under a franchise, are to be employed by the franchisee in connection with the sale, consignment, or distribution of motor fuel.

F.      Leased Marketing Premises

"Leased marketing premises" are marketing premises owned, leased or in any way controlled by a franchisor and which the franchisee is authorized or permitted, under the franchise, to employ in connection with the sale, consignment, or distribution of motor fuel.

G.      Fail to Renew and Nonrenewal

The terms "fail to renew" and "nonrenewal" refer to a failure to reinstate, continue, or extend a franchise relationship (1) at the conclusion of the term, or on the expiration date, stated in the relevant franchise, (2) at any time, in the case of the relevant franchise which does not state a term of duration or an expiration date, or (3) following a termination (on or after June 19, 1978) of the relevant franchise which was entered into prior to June 19, 1978 and has not been renewed after such date.

H.      Legal Remedies Available to Franchisee

The following is a more detailed description of the remedies available to the franchisee if a franchise is terminated or not renewed in a way that fails to comply with the Act.

A.      Franchisee's Right to Sue

A franchisee may bring a civil action in United States District Court against a franchisor who does not comply with the requirements of the Act. The action must be brought within one year after the date of termination or nonrenewal or the date the franchisor fails to comply with the requirements of the law, whichever is later.

### B.    Equitable Relief

Courts are authorized to grant whatever equitable relief is necessary to remedy the effects of a violation of the law's requirements. Courts are directed to grant a preliminary injunction if the franchisee shows that there are sufficiently serious questions, going to the merits of the case, to make them a fair ground for litigation, and if, on balance, the hardship which the franchisee would suffer if the preliminary injunction is not granted will be greater than the hardship which the franchisor would suffer if such relief is granted.

Courts are not required to order continuation or renewal of the franchise relationship if the action was brought after the expiration of the period during which the franchisee was on notice concerning the franchisor's intention to terminate or not renew the franchise agreement.

### C.    Burden of Proof

In an action under the Act, the franchisee has the burden of proving that the franchise was terminated or not renewed. The franchisor has the burden of proving, as an affirmative defense, that the termination or nonrenewal was permitted under the Act and, if applicable, that the franchisor complied with certain other requirements relating to terminations and nonrenewals based on condemnation or destruction of the marketing premises.

### D.    Damages

A franchisee who prevails in an action under the Act is entitled to actual damages and reasonable attorney and expert witness fees. If the action was based upon conduct of the franchisor which was in willful disregard of the Act's requirements or the franchisee's rights under the Act, exemplary (punitive) damages may be awarded where appropriate. The court, and not the jury, will decide whether to award exemplary damages and, if so, in what amount.

On the other hand, if the court finds that the franchisee's action is frivolous, it may order the franchisee to pay reasonable attorney and expert witness fees.

### E.    Franchisor's Defense to Permanent Injunctive Relief

Courts may not order a continuation or renewal of a franchise relationship if the franchisor shows that the basis of the non-renewal of the franchise relationship was a determination made in good faith and in the normal course of business:
     (1) To convert the leased marketing premises to a use other than the sale or distribution of motor fuel;
     (2) To materially alter, add to, or replace such premises;
     (3) To sell such premises;
     (4) To withdraw from marketing activities in the geographic area in which such premises are located; or
     (5) That the renewal of the franchise relationship is likely to be uneconomical to the franchisor despite any reasonable changes or additions to the franchise provisions which may be acceptable to the franchisee.

In making this defense, the franchisor also must show that he has complied with the notice provisions of the Act.

This defense to permanent injunctive relief, however, does not affect the franchisee's right to recover actual damages and reasonable attorney and expert witness fees if the nonrenewal is otherwise prohibited under the Act.

Issued in Washington, D.C. on June 12, 1996.

Marc W. Chupka,

Acting Assistant Secretary for Policy.

[FR Doc. 96-16124 Filed 6-24-96; 8:45 am]

BILLING CODE 6450-01-P

61 FR 32786-01, 1996 WL 343142 (F.R.)
END OF DOCUMENT